IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RHONDA S. FREEMAN,**                    Case Number 1:14cv212

    Plaintiff,                          Judge Sara Lioi

    v.                                  Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                          REPORT AND RECOMENDATION

## INTRODUCTION

Plaintiff Rhonda Freeman filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. § 405(g). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated January 31, 2014). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

## PROCEDURAL BACKGROUND

On February 24, 2011, Plaintiff filed an application for DIB and Supplemental Security Income ("SSI"), alleging a disability onset date of January 15, 2008, due to heart disease and depression. (Tr. 160-61, 197-203). The claim for SSI was denied initially on March 3, 2011. (Tr. 146-51). Plaintiff did not appeal the denial of her SSI benefits. The claim for DIB was denied initially on June 9, 2011 (Tr. 98-100) and on reconsideration on October 5, 2011. (Tr. 104-06). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 111). Plaintiff, represented by counsel, a vocational expert ("VE"), and a medical expert testified at the

hearing, after which the ALJ found Plaintiff not disabled. (Tr. 8, 29). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981. On January 31, 2014, Plaintiff filed the instant case. (Doc. 1).

Sometime after the hearing, Plaintiff requested the letter initially denying her SSI benefits; a letter she claimed she never received. (Tr. 25). Plaintiff then attempted to appeal her SSI denial to the Appeals Council, by submitting the March 3, 2011 letter, at the same time she appealed the ALJ decision in November 2012. (Tr. 27-28). The Appeals Council found the SSI denial letter included an erroneous conclusion that Plaintiff was disabled, finding that "no such determination was made." (Tr. 2). On April 23, 2013, Plaintiff filed a Good Cause for Late Filing application to request leave to file an appeal of the March 3, 2011 denial of SSI. (Tr. 25). Plaintiff has received no final response from the Appeals Council as to the status of her Good Cause for Late Filing application. (Doc. 19-1, at 1).

**FACTUAL BACKGROUND**

*Personal Background, Testimony and Disability Reports*

Born September 25, 1958, Plaintiff was 52 years old at the time of her application. (Tr. 31). She listed her impairments as heart disease and depression. (Tr. 197-98). Plaintiff did not own a car; however she did have a driver's license and drove a couple of times a month. (Tr. 32). Plaintiff lived in a two-story house alone. (Tr. 47). She performed her own personal care: including cooking, cleaning, and laundry; but did not do any yard work. (Tr. 47). Plaintiff stated she did not belong to any groups or organizations, and did not attend church or visit with friends or relatives. (Tr. 48).

Plaintiff has a Bachelor's degree in Management. (Tr. 33). She has prior work experience as a telemarketer and telephone sales agent. (Tr. 34-36). Plaintiff has not worked since December 2007 when she stopped working due to her medical conditions. (Tr. 198).

Plaintiff testified she had two heart attacks, one in 2001 and a second in 2009, both resulted in angioplasties and the placement of stents. (Tr. 36). Plaintiff identified situational chest pain resulting from stress about once or twice a month. (Tr. 38). Additionally, she claimed persistent shortness of breath. (Tr. 39). Plaintiff was prescribed Crestor, Lisinopril, Niacin, and aspirin for her heart issues. (Tr. 201).

Plaintiff experienced pain for a week or two every month in her hip, leg, and lower back on her right side resulting from a sciatic nerve. (Tr. 40-41). As a result of these conditions, she claimed an inability or difficulty standing, walking, sitting, bending, and squatting. (Tr. 41-43). She testified she could lift up to fifteen pounds but usually lifted only a few pounds at a time. (Tr. 43).

Plaintiff believed she had been suffering from depression since 1996. (Tr. 44). Additionally, Plaintiff alleged she suffered from nervousness, forgetfulness, and difficulty focusing and getting along with others. (Tr. 45-47). Plaintiff had been prescribed Abilify, Seroquel, and Zoloft for her mental conditions. (Tr. 201).

*Relevant Medical Evidence*

Plaintiff has a history of coronary artery disease dating back to 2001. (Tr. 250). In 2001, she had a myocardial infarction resulting in an angioplasty with stent placement. (Tr. 302).

In June 2007, Plaintiff suffered a lower back injury after a fall. (Tr. 263). She denied any history of chronic back pain or back surgery, and physical examination findings were normal apart from pain and tenderness. (Tr. 263). In November 2007, Plaintiff again presented with

lower back pain but denied any numbness or tingling. (Tr. 280-81). Plaintiff was able to ambulate at the examination. (Tr. 281).

Plaintiff had a second myocardial infarction in December 2008 and three stents were placed. (Tr. 333). On January 2, 2009, she described significant shortness of breath after only mild exertion but reported no orthopnea, paroxysmal nocturnal dyspnea ("PND"), palpitations, dizziness, or syncope. (Tr. 333). She was prescribed cardiac rehabilitation exercises; and at her rehab assessment on January 6, 2009, denied having any chest pain. (Tr. 338-340). On January 19, 2009, she underwent a cardiac stress test with indeterminate results. (Tr. 360-61). However on the same day, Plaintiff had an echocardiogram with a normal result. (Tr. 362-64). In April 2009, her cardiologist noted Plaintiff reported no pain, angina, shortness of breath, orthopnea, or PND. (Tr. 420). Plaintiff continued to report no pain or other complaints at her routine cardiac follow-ups. (Tr. 468-70, 498).

In September 2010, Plaintiff complained of sciatic pain in her right leg and was prescribed a course of physical therapy. (Tr. 534-38, 566). She attended two out of the prescribed ten physical therapy sessions for this issue. (Tr. 534-38, 741).

On May 24, 2011, Wilfredo Paras, M.D., examined Plaintiff. (Tr. 769-75). On examination, Plaintiff had good strength and muscle range in all areas except in the dorsolumbar spine. (Tr. 770, 772-75). Dr. Paras noted she had symmetrical reflexes, no muscle spasms, and no signs of cardiopulmonary issues. (Tr. 770). Plaintiff reported ongoing chest pain and shortness of breath. (Tr. 769). She said she was taking Zoloft, Abilify, and Seroquel and her mental problems "had improved with treatment." (Tr. 769). Dr. Paras concluded Plaintiff was limited to less than sedentary work. (Tr. 771).

4

*Mental Condition*

In October 2008, Plaintiff reported stress related to her finances, anxiety, depression, and insomnia. (Tr. 302). She denied feelings of hopelessness or anhedonia. (Tr. 302). Plaintiff was referred for further psychiatric evaluation and given trial medications. (Tr. 303). Later that month, during a mental health assessment, Plaintiff reported similar symptoms to William Zrenner, RN. (Tr. 306-308). She was diagnosed with major depression-single, insomnia, and cocaine dependency in remission (Tr. 308). Plaintiff was prescribed Seroquel for her insomnia, irritability, and anxiety. (Tr. 308). In November 2008, she reported an improvement in mood on medication; however, her other reported symptoms remained unchanged. (Tr. 310, 318-319). In December 2008, Plaintiff's mental status was largely normal following appointments with Mr. Zrenner. (Tr. 318-319, 322-323, 327). Plaintiff continued to report improvement in her symptoms when compliant with her medication through March 2011. (Tr. 348, 376, 436, 473-75, 481, 620).

In May 2011, Plaintiff began seeing Rebecca Snider-Fuller, a psychiatric clinical nurse specialist, for her mental health issues. (Tr. 819). Plaintiff reported she was depressed, irritable, and having relationship issues. (Tr. 819). Ms. Snider-Fuller assessed Plaintiff with episodic mood disorder and indicated she had moderate symptoms. (Tr. 819-20).

*ALJ Decision*

On September 13, 2012, the ALJ found Plaintiff had the severe impairments of post myocardial infarction, major depression, and history of substance abuse; but these severe impairments did not meet or medically equal any listed impairment. (Tr. 13-14). The ALJ found Plaintiff's other alleged impairments: cervicalgia and facet syndrome, obstructive sleep apnea, and emphysema/chronic obstructive pulmonary disease, were not diagnosed until after her date

last insured ("DLI") of September 30, 2011 and were therefore not relevant in determining her eligibility for DIB. (Tr. 13). The ALJ then found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: routine low stress work with no high or strict production quotas; limited interaction with the public; no intense interpersonal interaction; never work at unprotected heights, climb ladders, ropes, or scaffolds; occasionally climb stairs, bend and stoop; and perform unskilled work. (Tr. 15-17).

Based on the VE's testimony, the ALJ found Plaintiff could perform work as a stock clerk/merchandise marker, mail clerk, or office helper; and thus was not disabled. (Tr. 18-19).

## JURISDICTION

As a preliminary matter and in addition to Plaintiff's other issues on appeal, she requests the Court review her initial denial of SSI benefits from March 3, 2011. (Tr. 146). For the following reasons the Court declines to do so for lack of subject matter jurisdiction.

42 U.S.C. § 405(h) provides:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided.

The district court has jurisdiction to review "any final decision of the Commissioner of Social Security made after a hearing to which [the claimant] was a party". 42 U.S.C. § 405(g). By limiting review to "final decision[s]", the Social Security Act requires administrative exhaustion of remedies. 42 U.S.C. § 405(h); *see also Willis v. Sullivan*, 931 F.2d 390, 396 (6th Cir. 1991) (citing *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975)). Thus, Plaintiff's claim for SSI benefits required a final decision and exhaustion of administrative remedies before the Court could review it.

6

The applicable regulations describe the nature of the administrative review process: "If [a claimant is] dissatisfied with [the Commissioner's decision] in the review process, but do[es] not take the next step within the stated time period, [the claimant] will lose [her] right to further administrative review *and [her] right to judicial review*, unless [she] can show [the Commissioner] that there was good cause for [her] failure to make a timely request for review." 20 C.F.R. §§ 404.900(b); 416.1400(b) (emphasis added). The Plaintiff has sought, but not received, permission from the Commissioner to appeal her denial of SSI benefits.

The Supreme Court has held the finality requirement consists of two elements. *Willis,* 931 F.2d at 396-97 (citing *Bowen v. City of New York*, 476 U.S. 467, 482-83 (1986)). "First, a claim for benefits must be presented to the Secretary. This element is jurisdictional, and absent such a claim there can be no review. Second, the decision must be final in that the claimant has exhausted the administrative remedies prescribed by the Secretary." *Id.* Plaintiff made an initial claim for SSI on February 24, 2011. She did not appeal this denial. Therefore while she did present the SSI claim, she has failed to exhaust her administrative remedies with respect to the claim. Particularly relevant is her pending Good Cause for Late Filing application before the Appeals Council, a potential administrative remedy to her SSI denial. Because Plaintiff does not yet have a final decision of the Commissioner as to her SSI, the Court cannot entertain this claim.

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial

evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues that the ALJ erred because he: (1) failed to address her claim for SSI benefits; (2) did not evaluate medical evidence of her impairments after the DLI; (3) improperly weighed the medical opinions presented; (4) failed in his duty to develop the record; (5) erred in accepting the VE's testimony; and (6) improperly determined Plaintiff was in the "younger" age category. (Doc. 15, at 9-15). Each argument is addressed in turn.

### *The ALJ Did Not Err in Failing to Address Plaintiff's Claim for SSI Benefits*

Plaintiff argues the ALJ should have made a finding on her SSI benefits because she presented evidence of her eligibility for them at the hearing. However, Plaintiff did not have a claim for SSI benefits pending before the ALJ.  The Notice of Hearing sent to Plaintiff on April 16, 2012 states the only issue before the ALJ was the application for DIB. (Tr. 116). Plaintiff was given the option of submitting additional issues for review in the Notice of Hearing, but she failed to allege that her SSI claim should be considered. (Tr. 116). Therefore, the ALJ did not err in failing to consider her SSI claim because it was not at issue in the administrative hearing. *See* 20 C.F.R. § 416.1438(b); *see also Marshall v. Chater*, 75 F.3d 1421, 1428 (10th Cir. 1996)

(holding the hearing notice sent to Plaintiff properly identifies the issues to be decided by the ALJ).

Plaintiff claims by allowing medical evidence of disability after the DLI into the record, the ALJ rendered the SSI claim a viable issue on appeal, however this is not accurate. The regulations provide for three levels of review after an initial denial of benefits. 20 C.F.R. §§ 416.1402; 416.1429; 416.1467. Plaintiff did not request reconsideration of her initial denial or pursue any of the subsequent appeal options as required by the regulations; as such the initial determination was binding. §404.905. The ALJ's decision to allow the Plaintiff to submit medical evidence regarding conditions which occurred after the DLI does not cure the Plaintiff's failure to appeal her denial of SSI benefits through the appropriate administrative structure. Therefore, all medical evidence and allegations of ALJ error related to a claim for SSI benefits will not be considered by this Court.

### *The ALJ Did Not Err in the Weight Accorded to the Post-DLI Medical Evidence*

The Plaintiff alleged the ALJ failed to evaluate the impairments occurring after the DLI in determining her eligibility for both SSI and DIB. But as explained above, the ALJ was not required to consider an SSI claim but only that for DIB. To qualify for DIB, Plaintiff must have been under a disability as of the date her insured status expired on September 30, 2011. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a), 404.320(b)(2); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Thus, the Court will evaluate whether the ALJ appropriately considered the post-DLI medical evidence in determining Plaintiff's eligibility for DIB.

The ALJ found impairments did exist prior to the DLI, and he evaluated these impairments in determining Plaintiff's eligibility for DIB. But the ALJ refused to give substantial weight to medical evidence about separate conditions occurring after the DLI. In determining

eligibility for DIB "evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 845 (6th Cir. 2004). The medical evidence does not suggest the cervicalgia and facet syndrome, sleep apnea, or emphysema/chronic obstructive pulmonary disease existed prior to the DLI.

The ALJ did find Plaintiff suffered from major depression prior to the DLI; a condition for which she continued to seek treatment even after the DLI. Plaintiff was seen by Ms. Snider-Fuller one-time prior to the DLI and at that time was assessed with moderate symptoms. (Tr. 819-20). However, any other opinions given by Ms. Snider-Fuller after the DLI, but concerning the time up until the DLI, are retrospective and thus not entitled to significant weight. *See Strong*, 88 F. App'x at 845 (stating Plaintiff must prove disability in the relevant time period with contemporaneous and objective evidence). Although Ms. Snider-Fuller did continue to treat Plaintiff, further evidence of her mental condition assessed after the DLI is only "minimally probative" of Plaintiff's condition during the relevant period. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Therefore, the ALJ did not err by assigning minimal or no value to post-DLI medical evidence in the determination for DIB.

### *The ALJ's Decision Was Supported by Substantial Evidence*

The Plaintiff's next three issues: the weight of medical opinions; the duty to develop the record; and the VE hypothetical; all relate to whether substantial evidence existed to support the ALJ's determination of not disabled. As such, the Court construes these issues as a substantial evidence challenge.

### *The ALJ Appropriately Weighed the Relevant Medical Opinions*

Plaintiff argues the ALJ did not assign the appropriate weight to the medical opinions submitted into evidence. Unless the physician is a treating source, which carries a presumptively

controlling weight, the ALJ is responsible for determining the weight of medical opinions. 20 C.F.R. §§ 416.927(d)(2); 404.1527(d)(2).

Under the regulations, a "treating source" includes physicians, psychologists, or "other acceptable medical source[s]" who provide, or have provided, medical treatment or evaluation and who have, or have had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 416.902. An ongoing treatment relationship will exist when "medical evidence establishes that [claimant] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice…" § 404.1502. Non-treating sources are physicians, psychologists, or other acceptable medical sources who have examined the claimant but do not have, or did not have, an ongoing treatment relationship with them. § 416.902.

When evaluating a medical source, an ALJ must weigh medical opinions in the record based on certain factors. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*.

Last in the medical source hierarchy are non-examining sources. These are physicians, psychologists, or other acceptable medical sources who have not examined the claimant, but review medical evidence and provide an opinion. § 416.902. The ALJ will consider the findings of these non-examining sources as opinion evidence, except as to the ultimate determination about whether Plaintiff is disabled. § 416.927.

Dr. Paras

The ALJ did not err by assigning less weight to the opinion of Dr. Paras. Dr. Paras saw Plaintiff one time on May 24, 2011, after which he provided an opinion on Plaintiff's ability to work to the Bureau of Disability Determination. (Tr. 769-71). Thus, Dr. Paras was a non-treating source and his opinion was not entitled to controlling weight. 20 C.F.R. § 416.927(d)(2); SSR 96-8p.

The ALJ assigned less weight to Dr. Paras' opinion because it was not supported by his own findings. *Rabbers,* 582 F.3d at 660. Dr. Paras indicated that Plaintiff reported no cardiorespiratory distress, joint abnormalities, edema, varicosities, muscle guarding, or spasms. (Tr. 770). However, Dr. Paras found that Plaintiff's "physical and mental activities [are] mainly limited by her cardiac manifestations of coronary artery disease," and because of this she is limited to less than sedentary work. (Tr. 771).

Further, Dr. Paras' opinion was inconsistent with the record as a whole. *Rabbers*, 582 F.3d at 660. For example, Plaintiff had a normal echocardiogram, (Tr. 420), and numerous cardiologists' reports of stable condition throughout 2009 and 2010. (Tr. 420, 468-70, 498). Furthermore, Plaintiff's own behavior is contrary to a determination that she is only capable of less than sedentary work; for example, Plaintiff undertook a vacation to China, (Tr. 522, 561), and went horseback riding (Tr. 535).

Taking the above into account, the ALJ did not err in refusing to adopt Dr. Paras' RFC. "The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). The ALJ has the authority to decide an RFC regardless of a medical source determination. SSR 96-5p, at *5. Especially since

the ALJ determined Dr. Paras' opinion "appears solely based on the claimant's statements" as opposed to the objective medical evidence. (Tr. 17).

In sum, Dr. Paras saw Plaintiff on one occasion for the purpose of providing a medical opinion and his conclusions were inconsistent with both his own objective findings and others within the record; thus, the ALJ did not err in evaluating the opinion's weight. *See Rabbers,* 582 F.3d at 660. Therefore, the ALJ had substantial evidence to support the decision to assign Dr. Paras' opinion less weight based on its insupportable and inconsistent conclusions. 20 C.F.R. § 404.927(b), *see also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

Dr. Schweid

Next, Plaintiff argued that the ALJ erred by giving great weight to the opinion of medical expert Dr. Schweid. Dr. Schweid never examined Plaintiff but rather, testified at the hearing after having reviewed the medical evidence and history presented by Plaintiff, thus he is a non-examining source. While typically this source would be given less weight, the ALJ found Dr. Schweid's testimony was consistent with the written medical records of Plaintiff's conditions, and thus persuasive. 20 C.F.R. § 404.708; *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

In this case, the evidentiary medical records from the relevant time frame were created by treating sources, contemporaneous with their examinations and were consistent with the opinions of other treating sources contained in the record. §§ 404.708(a), (d), (f). In the absence of the opinion of a treating physician or other credible medical opinion, the ALJ relied on the documentary evidence as the most convincing determiner of Plaintiff's conditions. § 404.708. The documents, and the testimony derived therefrom, was "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.,* 966 F.2d 1028, 1030 (6th Cir. 1992).

For example, Dr. Schweid testified that Plaintiff had normal heart function according the echocardiogram, (Tr. 50), lower back pain that appeared to result from muscle strain, (Tr. 50), and right-sided sciatic pain. (Tr. 50-51). Dr. Schweid also noted Plaintiff's mental condition displayed some marked limitations, even citing to the April 2012 report by Ms. Snider-Fuller. (Tr. 51). These observations are consistent with the evidentiary medical record. (See Tr. 263, 280-81, 362-64, 534-38, 864-68). While Dr. Schweid was not the treating physician, he was able to provide a "longitudinal picture of [Plaintiff's] medical impairments" during the relevant time frame based on the entirety of the medical evidence submitted. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

The ALJ had "more than a scintilla of evidence" to support his reliance on Dr. Schweid's opinion. *Besaw,* 966 F.2d at 1030. Thus, the ALJ did not err in affording great weight to Dr. Schweid's review of Plaintiff's medical records and the opinion rendered therefrom, because they were based on substantial evidence.

*Duty to Develop the Record*

Plaintiff also argues the ALJ failed in his duty to solicit medical evidence that would have been relevant to Plaintiff's claims, however the ALJ made no such error. Plaintiff took issue with the ALJ's failure to present the post-hearing medical evidence to Dr. Schweid for review. Again, it was not reversible error for the ALJ to refrain from soliciting additional testimony from Dr. Schweid about the post-DLI medical records because they were not relevant to the DIB decision. Thus, this Court will evaluate whether the ALJ erred by not developing the

15

record further with respect to the relevant impairments, post myocardial infarction and major depression.

The "ALJ has the ultimate responsibility for ensuring that every claimant receives a full and fair hearing", but "[h]ow much evidence to gather is a subject on which district courts must respect the Secretary's reasoned judgment." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009) (quoting *Richardson v. Perales,* 402 U.S. 389, 391 (1971); *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993)). While the ALJ has the ability to supplement the record, in this case he found it was unwarranted.

Judicial review of an ALJ's decision not to solicit further medical testimony hinges on whether the testimony was necessary, not on whether it would have been merely helpful. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (holding the "full inquiry" described by 20 C.F.R. § 416.444 only requires a consultative examination when it is *necessary* to enable the ALJ to make the disability decision). The ALJ had credible evidence that Plaintiff's conditions were managed with treatment and showed no major abnormalities at the time of her DLI. While additional information on Plaintiff's medical conditions during the relevant time frame may have been helpful to the ALJ, it was not necessary in making a disability determination. The ALJ had sufficient evidence upon which to make a reasoned judgment; thus, this Court must respect the ALJ's decision to not gather more evidence. *Simpson,* 344 F. App'x at 189.

*The ALJ Did Not Err in the Hypotheticals to the VE*

Plaintiff also argues that the hypotheticals presented to the VE did not include the proper restrictions for Plaintiff. "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the

finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The hypotheticals posed to the VE by the ALJ included all of the credible limitations he determined to be in the Plaintiff's RFC. (Tr. 15, 60-61). The ALJ is entitled to rely on the VE's testimony regarding available jobs for a like individual in age, education, work experience and RFC. *See Foy v. Sec'y of Health & Human Servs.*, 951 F.2d 349, at *2 (6th Cir. 1991) ("A VE's response to a hypothetical that accurately portrays an individual's impairments constitutes substantial evidence for determining whether a disability exists."). The ALJ presented hypotheticals regarding physical and mental limitations, supported by the evidence and deemed credible, to the VE; thus, this Court is entitled to rely on her testimony as substantial evidence. *Id.*

### *ALJ's Finding that Plaintiff was "Younger" was Harmless Error*

Lastly, Plaintiff argued that the ALJ's determination that Plaintiff was "younger" was an error worthy of remand because it would necessarily alter the ALJ's disability determination. It was established during the oral hearing that Plaintiff was born on September 25, 1958 and that she was 53 years old at the time of the hearing. (Tr. 31, 49-50). As of her DLI, she was in the category of "closely approaching advanced age." 20 C.F.R. § 404.1563. In his findings, the ALJ did erroneously conclude Plaintiff was a "younger" individual at the DLI, however this was a harmless error. (Tr. 17). Under the harmless error standard, the burden of proving the error resulted in prejudice falls to the party attacking the agency's determination. *Shinseki v. Sanders*, 556 U.S. 396, 407-11 (2009).

The Plaintiff has not proven the ALJ's error materially affected the outcome. On at least two occasions during the hearing Plaintiff's age was discussed. (Tr. 31, 49-50). The VE, knowing the previous testimony regarding Plaintiff's age, testified in her hypothetical that an

17

individual of that age and with the Plaintiff's RFC could perform jobs in the economy. (Tr. 18, 31, 49-50, 60). The ALJ relied on the testimony given at the hearing by the Plaintiff, the medical expert, and the VE as to her age and abilities. Thus, there is no reason to believe the ALJ's DIB determination would be any different on remand and "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzalez*, 427 F.3d 324, 328 (6th Cir. 2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)).

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB benefits is supported by substantial evidence, and therefore recommends the Commissioner's decision be affirmed.

    s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).